Good morning. Carolyn Wiggin from the Federal Defender's Office for Mr. James Overstreet. I would like to reserve my last two minutes for rebuttal. I'll keep track of the time on that timer there, all right? Yes, I will. Thank you. Your Honors, I believe the first question that has to be addressed in this case is what is a fair characterization of Mr. Overstreet's ineffective assistance of counsel by failing to get exculpatory evidence, specifically his arms, showing that he has tattoos on his arms in front of the jury. And I think if we look at the petition he filed in federal court, which is at ER tab 5, we can see that he clearly raises a Sixth Amendment ineffective assistance of counsel claim. So he's identified the constitutional basis of his claim fairly. He talks about the fact that the crime victims both said they saw the attacker. Ms. Capos, who is the residential robbery victim, said that she saw her attacker's arms and she did not notice any tattoos on his arms. Mr. Overstreet alleged that he has tattoos on his arms, but the jury did not get to see the tattoos on his arms. Counsel, even if we agree with you that there was ineffective assistance of counsel, where is the prejudice? The prejudice is that this was a case in which the defense was Mr. Overstreet did not do it. He was somewhere else. There was several witnesses to an investigation, but the jury did not get to see the defendant's arms. What about the other evidence that was admitted to support the conviction? Your Honor, there was other evidence. There was fingerprint evidence and other evidence presented. However, the jury in this case, from what we can tell, deliberated for a day and a half and specifically asked to see the defendant's arms. And we can know from that that they considered it relevant. Well, let's see, the victim testified that she did not see any tattoos on the inner part of the arm, anywhere on the arms. Is that right? That's correct. And at some point she says, I saw his upper arms as he was, as the attacker was pounding her. She didn't notice any tattoos. Yeah, no tattoos at all. So if you're the defense lawyer and the guy you're defending, you're going to show the jury the fellow's arms, aren't you? I would. Sure you would. But then on the other hand, what if the tattoos have faded or you can't see them very well or they're kind of dull? Maybe then you have the wife testify that he had tattoos all over his arms and you don't put the fellow on the stand. Your Honor, I think that that would be something that, if this went back down for an evidentiary hearing, would be a question for the jury. Well, I think what Thompson's getting at, you know, there's no assertion as to how prominent or visible these scars are. Right? You know, it would have been easy, for instance, if he wanted to stay with his Fifth Amendment rights, you know, to have a colored photograph taken and have the wife testify to his authenticity. So, you know, the inference is, well, you know, maybe the scars weren't all that prominent. There is no assertion as to how prominent the scars were, is there? You know, he's been most... By the petitioner. He's done his best, I think, to articulate, I had prominent tattoos on my arms. He's not the most descriptive writer. Yeah, but his lawyer at trial could see those arms. And as Judge Tashima says, he doesn't have to take the stand. He could have photographs made or I suppose there might even be a way to show the arms in evidence without actually testifying. I'm not sure about that. I think there are cases that support you can show the arms without having him take the stand. Yeah, yeah. So, you know, it's just so obvious that that's what you would do if you were defending this case and the guy had discernible, observable tattoos all over his arms. Now that he didn't, lends one to believe that the defense counsel made a statement that said there were tattoos all over the arms. And you can understand the jury saying, well, we'd like to see the arms. You know, are there really tattoos all over the arms? See, that's part of the case. You know, that's part of the case, I think, that Judge Wallinson refers to as to the defendant's burden to show prejudice. As to, you know, what kind of difference the showing of the tattoos would have made. And I don't think there's any showing of that. Well, Your Honor, I think that in his petition, he says, grant me relief or at least give me an evidentiary hearing on this. He's asserting, I have these tattoos. I'm asserting they would have been exculpatory because they would have shown if the jury could have seen them, they would have seen I have these prominent tattoos. If we just slide by that issue, then get back to Judge Wallinson's question. Isn't the evidence of guilt I mean, I have to say, this is a very strong case. In fact, didn't he even confess? There was a confession. It did get before the jury. The defense attacked the whether that was given in a consensual way. Went into the fact, why didn't you tape record this confession if you had a tape recorder there? So there was a definitely evidence in support of the prosecution. However, there was also a fairly strong alibi defense put on partly by family members, but partly by professionals who had very little relationship at all with Mr. Overstreet. And they all had independent reasons for knowing when they saw him at different points on the afternoon of the Capos robbery. And, you know, the jury did spend a day and a half deliberating and did ask for this information. So I think there was also a fairly doubt raised by the defense as to the prosecution's case. Right. You've got three minutes. Do you want to reserve it? Let me just really quickly touch on one other point, and then I'll reserve the rest of the time. Okay. I'm just talking briefly about, again, the relevance of this evidence. The only way the tattoo information at all got before the jury was through Rita Overstreet, the client's wife. Now, Rita Overstreet was very problematic for the prosecution in this case because she was a witness to a lot of this timeline which supported an alibi defense. So the prosecutor had to attack her credibility and spent time doing that in his closing, talking about, look, she's his wife. She cares about him. She doesn't want him to go to jail. You can question her testimony, jury. So I think that we don't know. The jury might have thought, well, he's probably making up the tattoo thing as well. If he had had a chance to get these tattoos physically in front of the jury, that would have bolstered her credibility, not only on the tattoos, but on everything else she was saying. So it would have been important to the defense. And I will reserve my remaining time. Thank you. That's fine. Thank you. We'll hear from the State. May it please the Court. My name is Catherine Tennant, and I represent the State of California, in this case the appellee Edward Almeda, the warden. And as this Court is well aware, in order to establish an effective assistance, there's two prongs under Strickland. First, the petitioner or the appellant has to show that the defense counsel's performance was below an objective standard of reasonableness. And I agree with Judge Thompson in this case. I believe that here there are multiple reasons why the defense attorney may not want to have shown the tattoos to the jury. One reason that I thought of is maybe the tattoos really didn't exist. That was a possibility. Well, there's never been, you know, but... You know, we don't know that. Right. I mean, we're all just speculating. That's right. But that's a possible reason. Another reason might be that... Is that all we need under the case is a possible reason as to why the attorney might have taken this course of action? That's all you need. You just need a reasonable, tactical decision not to have produced that evidence. But that's different than a possible reason. Reasonable and possible are two different standards. I agree with you, Your Honor. Yes. In other words, what, if the factual circumstances are such that it's reasonable to conclude that a competent attorney would have done this, that's good enough? I mean, in terms of, you know, what we can review? Your Honor, there are so many varying levels. We don't have to have the best defense attorney. We just have to have a reasonable reason. That sounds repetitive. But in this case, there's more than just that. For instance, what if these tattoos were really offensive? What if these were tattoos that you wouldn't want a jury to see because they might really turn a jury off? But we don't have anything in the record. We don't. Normally we have an affidavit from the defense attorney. That's correct, Your Honor. Articulating the strategy. So as Judge Tshima recognized, we're just speculating. Is that enough? No. Definitely not. So then you can see that that's not enough to establish a tactical decision on the part of the defense attorney? That's not enough to be able to say that he was not competent and he did not make the defense attorney did not make a reasonable tactical choice. That's not enough. The type of evidence we have in this case is simply not enough. As the opposing counsel pointed out, the jury deliberated fairly long and asked for the tattoos. What do you make of that? I think that they were curious. But I think that here where we have a defense attorney where, as Judge Tshima said, the defense attorney gets that evidence out in front of them and he's able to argue. He's able to say, hey, these women were close to this defendant, and if they didn't see the tattoos, there's a misidentification here. That's a really good tactical reason. Because as the judges pointed out, there could be a really good chance here that these tattoos were very insignificant. I'd also like to point out that. . . That's what's missing here in the case, if you read the record, is we don't know the observability or the prominence of the tattoos. And if they were really very, very prominent, then you could say, well, the failure to show them to the jury might have prejudiced the defendant. If they were just faint and you really were not observable or maybe even weren't there, the failure to show them to the jury would not have been. And that's missing. Of course, the defense has not shown what it is. I guess that gets us to the question of prejudice. Right. So even assuming we can't say there was a tactical choice, can we say it prejudiced the defendant? Absolutely not. This is one of the. . . For some reason other than that, which I've articulated. Right. And what I'd like to say on that point is, in my experience working for the state as a prosecutor, this is one of the cases that has the strongest amount of evidence for the prosecution. This case had a staggering amount of evidence that this man committed these crimes. And so I think even if we had evidence of tattoos, we have the eyewitness victim, Stella Kappos, who's 66 years old. And when she comes to court, she says, I mean, this man was beating her up in her house. She's probably horrified. She's scared. She comes to court and she says, you know, I was able to see the tops of his arms, but I wasn't able to really get a good look at the whole arm. And can you blame her? I mean, here's a woman that has a man inside her house that's threatening to kill her. Did she identify him? You know what? That is what is so compelling in this case, Your Honor, is this woman sees Overstreet in front of her house in a car before he comes inside her house. And then she later comes inside her house, notices that the door is ajar, and Overstreet attacks her inside her house. She gets a good look at him and he beats her up and then takes a lot of her possessions. And then as he leaves, he threatens to kill her. But then as he leaves, she's able to watch him drive away. At trial, did she say, yeah, that's the guy that did it right there? Yes, with no doubt in her mind. And then, to this lady's credit, I was so amazed and impressed with this 66-year-old woman. She's able to find this man's car in her neighborhood. She tracks down his car, and the car tracks back to the same defendant, the same address. We have fingerprints from this defendant in the house. And then we also have a confession from this defendant that he did this because he didn't want to be charged with attempted murder. Some of us that are even beyond 66 might have some ability to do that. And so this is a case of staggering evidence for the prosecution. And it makes me think that there was definitely a good reason why this defense attorney didn't want these tattoos in front of the jury. Counsel, will you respond to opposing counsel's argument about the alibi evidence? Sure. You're talking about the wife, Rita Overstreet. And she referred to professionals who had no reason to manufacture alibi evidence. Well, in this case, Rita Overstreet's testimony was challenged on rebuttal. She testified that the defendant gave her a ride to, I think it was a certain meeting that she had to attend. And then she also testified that she arrived at a certain time. The prosecution presented rebuttal evidence that impeached her on that point, and that a witness at that meeting that she was ñ that Rita Overstreet was attending said, hey, she wasn't there at the time she said she was there. She was there actually later. And then I thought what was really interesting was that the times that Rita Overstreet presented in her testimony as to where the defendant was gave him enough of a window of opportunity to commit these crimes. So you take issue with the fact that there are independent alibi witnesses? Yes. Yes, I do. I take complete issue with that. I think in this case, it was one of the very most ñ very strongest prosecution cases I've ever seen. And on that, I just don't think there's any prejudice whatsoever. And if you have no more questions, thank you. No, thank you. All right. Rebuttal, Ms. Wiggin. Thank you, Your Honor. I will be brief. I just want to address the independent alibi witnesses. Certainly the prosecution did have rebuttal evidence to the defendant's alibi defense. However, there was an individual who saw the defendant at 3.50 in the afternoon. Who was that individual? That was a neighbor ñ I'm sorry, a person who worked for the NAACP Youth League, I believe. She was involved in some youth election, and he dropped ballots by the Overstreet home. And he knew what time he was there, because he had just picked up some kids at a youth center. And so he knew it was 3.50, and that's when he saw the defendant in front of the Overstreet home and gave him these ballots. There was also an individual who worked in the same ñ for the same organization as Rita Overstreet, which that organization was having a management meeting in the afternoon of the Capos robbery. That person left the meeting at about 4 o'clock to make copies of some reports that they didn't have enough copies of. So he leaves around 4 o'clock, and he sees Mr. Overstreet out in the lobby and says, ìCan I help you?î Mr. Overstreet says, ìOh, my wife's in there. Let her know I'm out here.î What time was the robbery? The 9-1-1 call, which it was admitted into evidence that that happened at 4-0-9. So if the jury believed that someone saw him at 4 o'clock at this substance abuse center where Ms. Overstreet worked, then I think it would be very difficult to believe he could have committed the Capos robbery. So the jury heard all of this evidence and rejected the alibi defense? Well, after a day and a half of deliberations, not being able to see the tattoos, they did vote to convict. But I think there was doubt in their mind, and there was a decent basis for doubt in their mind. You know, I think the court has identified the open question here. My client signed his petition saying, ìI have these tattoos. They would have been exculpatory.î So I think it's very difficult to just sort in the district court on the existence of the tattoos, how prominent they are. And that's the question that should go back to be answered in front of the district court. Thank you. All right. Thank you. We thank both counsel for fine arguments. The case is submitted for decision. Next case on the argument calendar is Gill versus Ashcroft.
judges: Thompson, Tashima, Rawlinson